UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FEDERICO QUAN, et al.,

                      Plaintiffs,

- against -

COMPUTER SCIENCES
CORPORATION, et al.,

                      Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 06-3927 (CBA) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

Federico Quan ("Quan"), Walter Gray ("Gray"), Don Tyrone Ballard ("Ballard"), and Jeanine L. Shamaly ("Shamaly") brought this putative class action against Computer Sciences Corporation ("CSC"), CSC's Retirement and Employee Benefits Plans Committee (the "Committee"), and several members of CSC's Board of Directors (some of whom also sit on the Committee), seeking certain relief associated with losses sustained by CSC's retirement fund – and the plaintiffs' individual retirement accounts – as a result of improperly backdated stock options that CSC allegedly granted to company executives. Docket Entry ("DE") 6 (Amended Complaint) ¶¶ 2-4. On March 19, 2007, the defendants requested a pre-motion conference in anticipation of asking the court to transfer the case to the venue in which CSC has its principal place of business. DE 8. The Honorable Carol B. Amon, United States District Judge, granted the defendants leave to file their motion and, with the parties' consent, referred it to me for decision. *See* Electronic Order dated March 21, 2007; DE 10 at 2. Having considered the parties' written submissions and oral arguments, for the reasons set forth below, I now grant the defendants' motion and order the case to be transferred to the Central District of California.

I.   Background

CSC is a Nevada corporation, with its principal place of business in California, that provides information and technology services worldwide. DE 13 (Declaration of [Defendants' Counsel] Lee G. Dunst in Support of Defendants' Motion to Transfer) ("Dunst Dec.") ¶ 2; DE 18 (Declaration of Susan M. Howell) ("Howell Dec.") ¶ 4. CSC employs approximately 87,000 people, of whom 44,500 work in the United States. Of its domestic employees, approximately 3,000 work in California and approximately 35 work in the Eastern District of New York. Howell Dec. ¶¶ 3, 5.

CSC maintains a benefits plan for qualifying employees, known as the Matched Asset Plan (the "Plan"), that the Committee administers out of CSC's headquarters in El Segundo, California. Amended Complaint ¶¶ 32, 33; Dunst Dec. ¶ 8; Howell Dec. ¶ 7. Participants divert a portion of their pay to the Plan and direct the Plan to purchase investments from among various options, including CSC stock. Amended Complaint ¶¶ 33, 35. According to the plaintiffs, from December 31, 1998 through June 23, 2006, CSC matched a certain percentage of its employees' initial contributions to the Plan, and for most employees that matching contribution was invested in CSC stock. Amended Complaint ¶¶ 24, 36.

Plaintiff Quan filed the original complaint in this action, on behalf of himself and a class of Plan participants, alleging that CSC improperly backdated stock options – for the purchase of an enormous amount of CSC stock – and then granted those stock options to Defendants Honeycutt and Level as part of their executive compensation packages. Plaintiffs Gray, Ballard, and Shamaly joined those allegations when they entered the lawsuit by means of the Amended Complaint. *See* DE 1 (Complaint) ¶¶ 3, 37, 41; *see also* Amended Complaint ¶ 49. The

plaintiffs assert that the backdating caused the price of CSC's stock to drop, which lowered the value of the retirement savings of Plan participants whose accounts held CSC stock. Amended Complaint ¶¶ 37, 39-40. They go on to claim that the defendants breached their fiduciary duties by means of both the backdating practices themselves and the failure to disclose those practices to Plan participants, and that the defendants are therefore liable to Plan participants under the Employee Retirement Income Security Act, 28 U.S.C. § 1001 *et seq.* ("ERISA"). Amended Complaint ¶¶ 1, 74-103.

Soon after the plaintiffs filed the Amended Complaint in this district, the defendants began the process of seeking to have the case transferred to the Central District of California. DE 8. At the time, CSC's backdating of stock options was also the subject of a number of pending shareholder derivative complaints that had been filed in the latter district and consolidated under the caption, *In re Computer Sciences Corp. Derivative Litig.*, lead docket no. CV 06-5288 (MRP) (Ex) (the "California Action"). *See* DE 8; DE 12 (Defendants' Memorandum of Law) ("Memo.") at 4-5, 9-10; DE 16 (Defendants' Reply Memorandum of Law) ("Reply") at 1-3. Subsequently, but before the parties argued the instant motion, the California Action was dismissed. *See* DE 21; DE 22 Ex. A (Order granting CSC's motion to dismiss).

It was also apparently the case, at the time this case began, that the United States Attorney's Office in the Eastern District of New York was conducting a criminal investigation into the backdating of executive stock options by companies around the country, including CSC (the "USAO investigation"). *See* DE 15-2 (Declaration of Edwin J. Mills) ("Mills Dec.") ¶ 10 & Ex. G. I do not know if that investigation continues (and the answer would not affect the result I now order), but I will assume that it does for the purposes of the following analysis.

II. Discussion

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A party seeking such transfer must establish that venue is proper in the transferee forum and must also make a "clear cut showing" that transfer is warranted. *In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 & n.3 (E.D.N.Y. 2006) (citing *Blass v. Capital Int'l Sec. Group*, 2001 WL 301137, at *4 (E.D.N.Y. Mar. 23, 2001); *O'Hopp v. ContiFinancial Corp.*, 88 F. Supp. 2d 31, 34-35 (E.D.N.Y. 2000)); *see also Chong v. Healthtronics, Inc.*, 2007 WL 1836831, at *11 (E.D.N.Y. June 20, 2007) ("The moving party bears the burden of making a 'clear and convincing showing' that there should be a transfer of venue.") (citing *Int'l Sec. Exch., LLC v. Chicago Bd. Options Exch., Inc.*, 2007 WL 1541087, at *2 (S.D.N.Y. May 24, 2007)).

Because the parties agree that this case could properly have been filed in the Central District of California, DE 10 at 2, I need only decide whether the defendants have made a clear-cut showing that a transfer is warranted. In making that decision, I must weigh several factors, none of which is dispositive: (1) the plaintiffs' choice of forum; (2) the convenience of witnesses; (3) the convenience of the parties; (4) the locus of operative facts; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) availability of process to compel the attendance of unwilling witnesses; and (9) trial efficiency and the interests of justice. *See Zaitsev v. State Farm Fire & Cas. Co.*, 2005 WL 3088326, at *1 (E.D.N.Y. Nov. 17, 2005);

4

*see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006). I discuss each in turn below.

*Plaintiffs' Choice of Forum*. Courts generally accord considerable deference to a plaintiff's choice of forum and avoid overriding it in the absence of other factors that clearly favor transfer. *Chong*, 2007 WL 1836831, at *11 (internal citations omitted); *Imagine Solutions, LLC v. Medical Software Computer Sys., Inc.*, 2007 WL 1888309, at *13 (E.D.N.Y. June 28, 2007) (citing *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998)); *GLMKTS*, 2004 WL 2434717, at *4 (the plaintiff's choice should not be disturbed where the factors are in equipoise). However, the particular circumstances of a case can undermine the rationale for such deference. Thus, the plaintiff's choice of forum has less weight where the plaintiff does not reside in the chosen forum or where there is little connection between that forum and the circumstances at issue in the litigation. *In re Hanger*, 418 F. Supp. 2d at 170 (citing *Cali v. East Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 292 (E.D.N.Y. 2001)); *Zaitsev*, 2005 WL 3088326, at *3; *see also Chong*, 2007 WL 1836831, at *11 (plaintiff's choice of home forum entitled to less deference where the jurisdiction had no other connection to the litigation). Likewise, a plaintiff who sues as a class representative rather than solely for her own benefit is entitled to less deference in her choice of forum. *Jones v. Walgreen, Co.*, 463 F. Supp. 2d 267, 274 (D. Conn. 2006) (citing *In re Warrick*, 70 F.3d 736, 741 & n.7 (2d Cir. 1995)).

All of those circumstances are present here. First, none of the four named plaintiffs resides in this district or its home state of New York. Indeed, two of them – Ballard and Shamaly – reside in the state of California to which the defendants would have me transfer their case. Amended Complaint ¶¶ 10, 11. Second, there is no identified connection between the

5

circumstances at issue in this litigation and the Eastern District of New York. Third, the named plaintiffs purport to represent a class, the members of which may be scattered across the globe. *See* Howell Dec. ¶ 3.

Accordingly, the plaintiffs' choice to litigate here, although something I must consider, has less weight than it might otherwise. In seeking to avoid that conclusion, the plaintiffs cite *D.H. Blair* for the proposition that their choice of forum should be given additional weight because the defendants agree that venue could be proper in the Eastern District of New York. Opp. at 2; Tr. 29-30. Their reliance is misplaced. In the context of this case, *D.H. Blair* stands for no more than the proposition that, absent any of the circumstances described above, the plaintiff's choice of forum is entitled to "great weight[.]" 462 F.3d at 107. But when those circumstances are present, as they are here, that weight is diminished, irrespective of whether the defendants agree that venue lies in the plaintiffs' chosen forum. *See In re Hanger*, 418 F. Supp. 2d at 170. Nothing in *D.H. Blair* suggests otherwise.

Of course, just because I need not defer to the plaintiffs' choice does not mean that I must reject it. Indeed, one might expect that in the circumstances here – where no plaintiff resides in this district and the case is a putative class action that might just as well be brought elsewhere – the plaintiffs would have an affirmative reason for their choice. I therefore pressed the plaintiffs' counsel to explain that choice. He identified three reasons, which I assess in turn below.

First, counsel noted that the USAO investigation is being conducted in this district, and that relevant documents might therefore now be found here. Tr. 19. The latter proposition, while likely true, is completely irrelevant. I assume that any documents the parties may need for this litigation are available from the parties themselves – and, in the case of CSC, in the Central

6

District of California – to the same extent they would be even without the prosecutors in New York having obtained copies of those documents for investigative purposes. Moreover, I cannot imagine that while the investigation is continuing, the relevant federal agencies would, without compelling objections, simply make themselves available as the source of first resort for any civil litigants who seek evidence from their files. *See*, *e.g.*, Fed. R. Crim. P. 6(e) (general rule of secrecy pertaining to matters occurring before the grand jury). In short, the pendency of the USAO investigation does not provide any meaningful connection between this court and the instant litigation. Moreover, even if the USAO investigation in this district could provide such a connection, it would be offset by a concurrent investigation into CSC's stock option practices being conducted by the Securities and Exchange Commission's office in Los Angeles, California. *See* Dunst Dec. ¶ 19; Tr. 21-22; Memo. at 9 n.2. While I find both investigations immaterial for purposes of the motion before me, if either is relevant, both are, and to the same extent.

Counsel's second explanation for his clients' choice of this district is that Brooklyn offers a convenient forum for Quan, the sole named plaintiff in the original Complaint. Tr. 23. Even taken on its own terms, the explanation is an odd one: Quan resides in Massachusetts, not New York. In the context of the Amended Complaint, the explanation is even less compelling. Quan is now but one of four named plaintiffs, all of whose interests must be considered; none of them resides in New York, and two reside in California. I would therefore expect that if proximity of the forum to the named plaintiffs' residences were of paramount importance, the plaintiffs would be consenting to the proposed transfer rather than opposing it.

It was only after some pressing – and after it became clear that the first two proffered reasons were not particularly persuasive – that counsel offered a third explanation for the

7

plaintiffs' choice of venue. Counsel explained that whereas the case law in the Central District of California may foreclose persons who are not current participants in the Plan – such as plaintiffs Ballard and Shamaly, *see* Amended Complaint ¶¶ 10, 11 – from asserting that they have standing for the claims at issue here, that issue has not yet been addressed in the Second Circuit. Tr. 30-31, 47-48. This last explanation seems more plausible an explanation of the plaintiffs' choice than its predecessors, but it is no more compelling. Even if it is true that the law in this circuit gives some of the plaintiffs an opportunity that they would not enjoy in California – an analysis of the case law that I have no occasion to assess – that is not the sort of legitimate connection between forum and litigation that would persuade me to defer to their choice. *See Iragorri v. United Tech. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001) (stating, in the context of a *forum non-conveniens* motion, that the degree of deference afforded a non-resident plaintiff's choice of forum depends on the validity of the reasons that underlie her choice; and disfavoring as one such reason forum-shopping for advantageous local law); *Imagine Solutions*, 2007 WL 1888309, at *13 (applying reasoning in *Iragorri* to a motion for change of venue under 28 U.S.C. § 1404(a)).

In sum, the circumstances of this case undermine the deference that courts normally accord to plaintiffs in their choice of forum. Moreover, the reasons the plaintiffs have proffered for preferring to litigate in this district are either ill-conceived or not compelling. As a result, I give little weight to the plaintiffs' choice of this district.

*Convenience of Witnesses*. The convenience of witnesses – especially non-party witnesses – is arguably the most important factor in determining whether a transfer is warranted. *In re Hanger*, 418 F. Supp. 2d at 168; *Chong*, 2007 WL 1836831, at *12 (citing *Navigators Mgmt. Co., Inc. v. St. Paul Fire and Marine Ins. Co.*, 2006 WL 3317030, at *4 (S.D.N.Y. Nov. 9,

2006)); *Neil Bros.*, 425 F. Supp. 2d at 329. As a result, a party seeking transfer must normally identify the key witnesses she intends to call and briefly describe the nature of their testimony. *Neil Bros.*, 425 F. Supp. 2d at 329 (citing *Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). In considering this factor, I must not simply compare the number of witnesses who reside in each relevant area; instead, I must "qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Id.* (citing *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004)).

The record provides no reason to believe that any potential witness lives or works in New York. To the extent the plaintiffs argue to the contrary, they rely on nothing more than speculation that some absent members of the putative class may reside in New York, Opp. at 5, but they do not go so far as to predict that any such person may be asked to testify in this litigation. Nor do they contest the defendants' assertion that "[n]one of the 35 CSC employees in [sic] EDNY perform any work in connection with [the Plan] or in connection with CSC's executive stock option practices." Howell Dec. ¶ 6.

The record does not merely show that the non-party witnesses lack ties to New York; it also shows that they are much more likely to find California a convenient forum for their testimony. The defendants report, without contradiction, that "[a]ll CSC employees with knowledge of the committee's administration of the plan live and/or work in California." Dunst. Dec. ¶ 11; *see also* Howell Dec. ¶ 7. They further note that all identified non-party witnesses thus far are attorneys from the law firms that advised CSC on the administration of the Plan, and that all of those attorneys worked in the California cities of Los Angeles, Irvine, and San Francisco (save for one attorney who worked in Washington, D.C.). *See* DE 26.

In opposing the requested transfer, the plaintiffs contend that the location of witnesses is irrelevant because depositions can be taken outside the forum. That is true as far as it goes, but not persuasive because it explicitly rests on the assumption that the case will terminate before trial. *See* Tr. 35-39; Opp. at 3-4. While that may be a reasonable expectation for the attorneys familiar with the merits of the case, at this stage there is nothing in the record that would justify using it as the basis for resolving a dispute. Unless the plaintiffs waive their right to trial – which they understandably have no wish to do, despite their expectation that no trial will be necessary, Tr. 36 – I must assume that witnesses with relevant information will at some point be required to testify in the forum district. Because a trial in California would be more convenient for most of the likely witnesses than a trial in New York, this factor weighs in favor of transfer.

*Convenience of the Parties*. Residence is the touchstone for party convenience, *Neil Bros.*, 425 F. Supp. 2d at 328, and the majority of all parties to this litigation – two of the four named plaintiffs and two of the five individual defendants – reside or are located in California. For purposes of analyzing this factor, CSC's negligible corporate presence in this district – consisting of 35 employees, none of whom is alleged to have any knowledge of the events at issue, *see* Amended Complaint; Howell Dec. ¶ 6 – is plainly dwarfed by the thousands of employees it has in California. *See* Howell Dec. ¶ 3. In contrast, no party resides in New York: those located outside of California reside in the states of Illinois (defendant Patrick), Indiana (plaintiff Gray), and Massachusetts (plaintiff Quan and defendant McFarlan), as well as the nation of Latvia (defendant Bailey). *See* Amended Complaint ¶¶ 8, 9; Dunst Dec. ¶¶ 5-7. Rejecting, as explained above, the plaintiffs' proposed assumption that the case will end without a trial, I presume that all of the non-California parties will at some point have to travel to this

litigation regardless of where it proceeds. For such parties viewed as a group, neither California nor New York appears significantly more convenient than the other.

Transferring this case to the Central District of California will undoubtedly create some inconvenience – if only through higher costs – associated with the parties' representation; they must either pay local counsels' costs to litigate in California or retain California-based attorneys. That burden is lessened in the circumstances of this case, where the law firms representing both sides have offices in California. *See* Tr. 9; Dunst Dec. Ex. F. More important for my analysis is that such counsel-related burdens are generally insufficient to forestall a transfer when the other factors support one. *See Zaitsev*, 2005 WL 3088326, at *3. On balance, I conclude that it would be more convenient for the parties to litigate this action in California than in New York.

*Locus of Operative Facts*. The locus of operative facts is traditionally an important consideration in the transfer analysis. *Chong*, 2007 WL 1836831, at *12 (citing *Int'l Sec.*, 2007 WL 1541087, at *5). "Courts routinely transfer cases to the district where the principal events occurred, and where the principal witnesses are located." *Id.* at *12 (citing *Tralongo*, 2007 WL 844687, at *3). Here the locus is undoubtedly California. CSC has its headquarters in California, it administered its executive stock option plan from that State through the efforts of employees who all live and work in California (save for one telecommuter in Arizona), and the Committee met and made all of its decisions in California. Howell Dec. ¶ 7; Dunst Dec. ¶¶ 9-10.

The plaintiffs argue that the case should remain here because they hope to prove that false or misleading documents relating to the Plan were mailed to CSC employees in this district. Opp. at 5, 7. That specific allegation is not made in either the original or Amended Complaint and is not supported by the record; the defendants therefore argue that I should ignore it. Reply

11

at 4 (citing *Sheet Metal Workers' Nat'l Pension Fund v. Gallagher*, 669 F. Supp. 88, 92 n.8 (S.D.N.Y. 1987)).  Their objection has merit, but I do not rely on it.  Even taking into account the alleged mailings into this district – a fact that might obtain in many other districts as well – I would still conclude that California is the locus of operative facts in this case.  Moreover, the plaintiffs concede, and the case law confirms, that to the extent the defendants breached their fiduciary duties to the plaintiffs, those breaches occurred in California.  Opp. at 7; *Moore v. St. Paul Co., Inc.*, 1995 WL 11187, at *9 (D.N.J. Jan. 3, 1995) (breach of fiduciary duty for negligent management of assets of ERISA plan occurred in the district where defendant managed the assets); *see also In Re Hanger*, 418 F. Supp. 2d at 169  ("Misrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received.") (quoting *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998)).  This factor therefore favors transfer.

*Location of Relevant Documents and the Relative Ease of Access to Sources of Proof*.  Most if not all documents (and other evidence) relevant to the instant action will be found in California, where all of the events at issue occurred and where most of the witnesses work or reside.  Dunst. Dec. ¶ 12; Howell Dec. ¶ 7.  That certain documents relating to the backdating of executive stock options at CSC may already have been produced in this district in the context of the USAO investigation is irrelevant – CSC is the source of that documentation, and it is to the California-based CSC (or its co-defendants, none of whom resides in New York) that the plaintiffs will address their discovery requests.  This factor therefore weighs in favor of transfer.  That said, I give this factor only minimal weight, and my ruling would not change even if I were persuaded that the documents to be produced in this litigation would largely be found in this

district. In light of technological advances that facilitate access to documents and other types of evidence, the location of relevant documents and the relative ease of access to sources of proof plays a less significant role in the transfer analysis. *See*, *e.g.*, *Colabufo v. Continental Cas. Co.*, 2006 WL 1210919, at *4 (E.D.N.Y. Apr. 27, 2006).

*Relative Means of the Parties*. Where an economic disparity exists between the parties, courts may consider their relative means. *Neil Bros.*, 425 F. Supp. 2d at 331 (citing *KPMG Consulting, Inc. v. LSQ II, LLC*, 2002 WL 1543907, at *4 (E.D.N.Y. July 12, 2002)). Although such a disparity appears to exist here – at least as between the individual plaintiffs and the corporate defendants, *see Blass*, 2001 WL 301137, at *6[1] – the plaintiffs have not argued that litigating in California would be more expensive than litigating in New York. Opp. at 8. Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in California, this factor adds nothing to my analysis. *See Neil Bros.*, 425 F. Supp. 2d at 331 (a party seeking to rely on this factor "must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances") (quoting *Federman Assocs. v. Paradigm Medical Indus., Inc.*, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997)).

*Forum's Familiarity with the Governing Law*. All of the plaintiffs' claims are predicated on the federal ERISA statute, with which judges in both the Eastern District of New York and the Central District of California are familiar. This factor is therefore neutral. *See In re Hanger*, 418 F. Supp. 2d at 170; *Blass*, 2001 WL 301137, at *6.

---

[1] The record contains no information regarding the financial status of the individual defendants, although I note that they include the Chief Executive Officer, Chief Financial Officer, and three Board members of a prominent global information and technology services corporation. Amended Complaint ¶¶ 17-20; Dunst Dec. ¶¶ 3-7.

*Availability of Process to Compel the Attendance of Unwilling Witnesses*.  Neither party has provided any information with respect to this factor, and I would deem it neutral but for the heavy concentration of potential witnesses in California, and the absence of any information that points to a potential witness in New York.  Based on the record before me, if a non-party witness must be compelled to appear, there would likely be little difficulty in assuring her appearance in the Central District of California, but a significant limitation on the court's ability to compel her appearance in this district.  *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) & (B)(iii).  This factor therefore weighs slightly in favor of transfer.

*Trial Efficiency and the Interests of Justice*.  Whether a transfer is in the interests of justice is primarily a question of judicial economy.  *Chong*, 2007 WL 1836831, at *15 (citing *Colida v. Panasonic Corp. of N. Am.*, 2005 WL 3046298, at *4 (S.D.N.Y. Nov. 10, 2005)).  The existence of a related action in the transferee district and docket conditions in both districts are proper considerations in determining where litigation would be fair and most expedient, and the former consideration can be determinative.  *Id*; *Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004).  Up through oral argument, the defendants stressed the import of the California Action in terms of the efficiencies they claimed would attend transfer.  *See* Mem. at 4-5, 9-10; Reply at 1-3.  That action has since been dismissed.  *See* DE 21; DE 22 Ex. A (Order granting CSC's motion to dismiss).  Notwithstanding the dismissal, the defendants believe that transfer to California would still prove more efficient than remaining here.  DE 21.  They argue that the presiding United States District Judge in the California Action, the Honorable Mariana R. Pfaelzer, "has had far greater involvement than has this Court with the facts and the legal issues relevant to the present action," and express their intent, if I grant their

motion, to seek to have this case referred to Judge Pfaelzer pursuant to the local rules in the Central District of California. Tr. 4; DE 21 at 2.

The defendants concede that there is no guarantee that Judge Pfaelzer would accept this case were I to grant their motion. Tr. 4-5. But even if she agreed to do so, the defendants have failed to persuade me that Judge Pfaelzer enjoys an appreciable comparative advantage in adjudicating the claims at issue. I do not dispute the defendants' contention that at this stage Judge Pfaelzer is more familiar than any judge in this district with the factual circumstances that underlie the litigation, but there is nothing novel about those circumstances, nor about the legal claims that arise out of them. Moreover, the parties agree that the likely next step in this case will be a motion to dismiss on the pleadings, a motion that will not provide any occasion for the deciding judge to make any use of factual knowledge gained from other cases. Tr. 17. When I asked counsel for the defendants to explain the efficiencies associated with transferring this case to the Central District of California (assuming that Judge Pfaelzer would agree to accept it), he answered that while it would not be "necessarily harder for Judge Amon" to preside over future proceedings in this district – particularly the anticipated motion to dismiss – it would nevertheless be "easier for Judge Pfaelzer" to do so in California. Tr. 15. The distinction is surpassingly fine; even if I had the subtlety of mind to comprehend it, I doubt it would be substantial enough to tip the scales in favor of transfer were they not already heading in that direction.

Docket conditions and calendar congestion – in both the transferor and transferee districts – are also relevant considerations for the court and may be afforded "some weight." *Chong*, 2007 WL 1836831, at *15; *Neil Bros.*, 425 F. Supp. 2d at 334. The defendants do not argue that these

15

considerations favor transfer. Ironically, the statistics provided by the plaintiffs (drawn from the federal judiciary's Internet web site), though not compelling, do suggest a slight advantage to litigating in California. Mills Dec. ¶ 5 & Ex. B. (for the 12 month period preceding September 30, 2006, the median time from filing to disposition was 3.3 months shorter in the Central District of California than in the Eastern District of New York; and the median time from filing to trial was 7.7 months shorter in the Central District of California than in the Eastern District of New York). That advantage is insufficient on its own to warrant a transfer. *Chong*, 2007 WL 1836831, at *15; *Neil Bros.*, 425 F. Supp. 2d. at 334. In short, if there is any overall efficiency to be gained by litigating this case in the Central District of California, it is too negligible a benefit to warrant disturbing the status quo and I give it no weight in making my decision.

III.     Conclusion

Considering the totality of the factors set out above, I find that the defendants have made a clear-cut showing that a change of venue is warranted under the circumstances of this case. I therefore grant their motion and order this action transferred to the Central District of California.

**SO ORDERED.**

Dated: Brooklyn, New York
       January 7, 2008

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge